John F. Donahue. Mr. Donahue, you may proceed.  Good morning, Your Honors. For the record, Jack Donahue, on behalf of the appellant defendant. In this particular case, there is one singular issue, and that issue is only whether the defendant was rightfully convicted and found guilty by a trial judge in a bench trial. For the offense of having possession of 100 to 400 grams of cocaine, and this is a constructive possession situation. I think both parties agree regarding what the law is attempting to overturn a judge's finding in a bench trial. What that law is regarding, you have to take it in the light most favorable to the state. You can't substitute your judgment for that of the trial judge who determines the credibility of the witnesses. And that trial judge is the one who draws the reasonable inferences from the circumstances of the case. We agree with that, and we also agree, I believe, what the law is regarding constructive possession. The Supreme Court has talked about that in a couple of older cases. There have been some nuances since then, but the substance of the cases that were cited in both facts remain as the principles of what is considered adequate for constructive possession. Counsel, you've recited the law and what we're bound by with respect to credibility findings that the trial court made that we certainly can't change, and we're bound by those. But isn't also the defendant's flight to Michigan evidence of her guilt that the trial court was entitled to rely on? Yes, there's no question that evidence of flight is certainly a factor to consider. I think also a factor to consider would be that the defendant was suffering from paranoia and recently had breast cancer. Her husband basically took her out of the hospital in a situation where she had been medicated. He had previously told her that they were in big trouble, so he actually certainly increased her paranoia at that particular time. I would just say from a matter of the facts of the case that she did decide to come back when she found out that there was big trouble back here in Illinois. She did come back here to try to address what the problems were, but certainly flight would be a factor to consider. And there was other circumstantial evidence that the trial court took into consideration, such as the powdery substance that was on the table in the basement with the digital scale, the baggies, the ties. As you mentioned, her symptoms that were consistent with the use of powder cocaine, which is what was found in the safe or the lockbox in the safe. So why should we change the trial courts? Well, I believe regarding that powder that was found, I guess it could be extrapolated that because she's the owner of the house and she would have had access to that basement without being disingenuous, there's no question she would have access to the basement. The husband had also indicated that he would put tools and stuff away, which were used for his drug dealing, but he also said sometimes he would just cover it. So she could have had access to that. I think the crux of the issue is, though, did she really have access to what was in the safe? What was in the lockbox, which was located within the safe? That's the crux of the issue, and that's what she was found guilty of, having both knowledge and control over that. Did she have a key to that lockbox? No, there was no record. There wasn't a key found, was there? There wasn't a key found. In fact, there was no – I think the record is silenced. The trial court record is silenced as to the whereabouts of the key. Well, the lock got picked before there was any question about the trial and the key, correct? I mean, they came in there when the parties were gone. Yes, sir. The lockbox had been picked by a locksmith who was called in by the police. But one of the dominant issues, I believe, was that the trial judge also, in making his finding, erroneously presumed that the lockbox was opened when the police came in, that he basically didn't consider the fact that it was locked and the locksmith had to come in and open it up. Well, the locksmith testified, didn't he? He did. So it was just a confusion or he didn't hear it? I'm not sure, Your Honor. But he indicated in his finding that the lockbox was open, which is a pretty important issue. Did anyone testify to that effect? The what, Judge? That the lockbox was open. No. No. The only evidence was that a locksmith came in and picked the lock. And you don't pick a lock if it's open unless you're kind of perverse. True. So was that fact with respect to the lockbox sufficient in and of itself to raise a reasonable doubt of the defendant's guilt? I think it's just a factor, Your Honor, but I think it's an important factor. There are other factors, too. Did she ever try to disassociate herself with her husband? Before this, she had been missing. She left him because of his drug dealing. She left and went out of state for two and a half years. Did he testify relative to her dislike of his dealing? Yes. And he testified that, of course, he tried to exculpate her and indicated that she had nothing to do with this. Was there any evidence that indicated that he attempted to hide his activities from her? There was some evidence of it. But, again, I think it's fair to say that at some point she realized that she was still living there. She had breast cancer, so then she came back to live with him. And I think at some point when she was living with him, she came to the realization that he was getting drugs again. Right. But I'm sorry, Your Honor. Did she have a key to that basement door, which he could, according to my memory of the evidence, he locked from his – if he was staying in the basement, he locked from his side of the door? Did she have a key to that? There's no evidence of that, Judge. But whether she had access to the basement, I think, once again, I think it's fair to say that she could have had access to the basement and what was in the basement. But there's no evidence that she had actual access, control over what was in that lockbox. And I would just indicate, of course, that she never admitted or made any statements about what was in that lockbox. She never – there was no forensic testing. There's no forensic nexus to that. And also, as I've indicated, that stray powder that was found, also the – Mr. Harmon's husband had testified he usually put that stuff away or covered it up. Now, what does that mean? So, obviously, he said he didn't do any drug dealing in the house, but he did drug preparation for his dealing in the house. If she's guilty, are all spouses or significant others guilty if they reside with the primary dealer of drugs? Well, I think the factor there would be whether or not – not whether they had knowledge of the drugs, but whether or not they had control or an intent to control. So I would indicate no, Your Honor. Without sounding stupid, was there any evidence to establish that she tried to control this – these drugs or the bounty from them? No, Your Honor. I don't believe so. How did the trial court rationalize its conclusion that she was guilty? Well, the trial judge made a very specific finding of the circumstances that he found, including the – he indicated that the police were – the state witnesses were credible, and the defense witnesses were inconsistent and not credible. Our position is, and my position is, I don't think it's a question of who's credible necessarily. It's a question of – I think the police can be very credible, and they were credible about what happened, but I believe that there is no credible evidence that this woman actually had control of what was in that lockbox based on the circumstances of the case. Well, I have two children. I think they're in their 40s. When they believed in Santa Claus, they were very credible. And so the real question isn't whether the individual is credible insofar as what they believe. It's whether the story or the allegations, such as whether or not she was in control, is credible. What was the evidence from these credible witnesses for the state that indicated that she was in control? I don't think there was any. Well, I'm not asking you to prove a negative fact, but if they didn't say anything other than speculation, then that's sufficient for me as an answer. According to some of the findings of the trial court, I believe he said that the state's witnesses were credible, the defense witnesses were not credible, that at times their testimony was incredulous, contradictory, and in general improbable. But then he goes a little later and says, and the circumstantial evidence shows that she has control over the cocaine. She wanted it. She OD'd on something apparently that was apparently powder, not necessarily crack cocaine. Now, her version of this particular transaction or that night was that she and a niece had gone to Waukegan and gotten crack cocaine, which has a different characteristic than powder, correct? And they allegedly split it, and she described how she smoked it. But the police didn't find any evidence of crack cocaine in the house, did they? No, they did not. So all they found was that powder that was downstairs in some ink tub or basin? Some residue that was found there. But he was dealing in powder cocaine. Yes, he was. Not crack. Correct. And for those reasons, Your Honor, we would respectfully ask Your Honors to consider the finding, especially based upon some of the false premises that were made and based upon the fact that there is no, I don't think there is any, there's certainly no direct evidence. There's no circumstantial evidence regarding what was in the lockbox, that she had control over that, for what the police found when they came into the premises. One last question. Yes, Your Honor. Did the judge, the judge found the state witnesses credible and the defense witnesses not credible. So then the next question is, any place, and candidly, I don't recall, but did he ever say that based upon the testimony of the state witnesses, that he found beyond a reasonable doubt that she was guilty? I don't think it was that specific.  Thank you, Your Honors. Thank you. You'll have an opportunity to make the vote. Appreciate it. Thank you. Ms. Gamble, you may proceed. Thank you, Your Honors. To go to the last question asked first, the judge did not get that specific regarding the state's evidence. He did, as Your Honor noted, find that the police and the state's witnesses were credible at page 834, and then said, unfortunately, he could not find that the defense witnesses were credible at page 837. The trial judge says, I think her testimony that she did not know about the cocaine is highly improbable, and the court believes beyond reasonable doubt that she did. At page 842, the court says that regarding the testimony about the credit cards in the safe is inconsistent and not credible. And then, quote, I think the conclusion is that Mrs. Hermes knew that there was cocaine down in the basement. And then part of what Your Honor cited was that the trial court's comments at 843, where the judge finds that she had access to the downstairs basement and somebody went in there, took out the pink basin, had access to that, and somehow or another, Mrs. Hermes got an overdose of cocaine with signs of powder cocaine, not crack cocaine. A little further, the court believes that Mrs. Hermes had knowledge of the drugs in the house, and she had intent to use those drugs. I was just going to say, but the issue here isn't necessarily what her knowledge was. She could have known it was there, and there might have been some residue left in that basin after he had completed a transaction. But isn't the charge that she possessed it, knowingly possessed it? Yes. Did they find her with her arms around the safe in the lunchbox? And I believe that reflects Judge McLaren's questions also. The best, perhaps, proof of her possession and control is her use of the cocaine. Her testimony— 50 grams worth or over 50 grams worth, or whatever the charge was. The testimony is that she's convicted of 100 to 400, which is the amount that is in the lockbox and what's inside the safe. And there was no key found for it. There was no key found at all, but as— And it was locked. It was not open. Correct. When the police came. Yes, the police did have to pick the lock in order to get to it. However, William, the husband, testified that he always put away or at least covered his cocaine supplies or tools, and he said that someone else, not him, had left it out. Well, do we know how much was left out? Was there any evidence in the record of how much was left out in that basement? Were there 100 grams left out in the basement? No. Left out on the table. Right. There's residue on the table, there's residue on the pink basin, residue on the knife, residue on the digital scale. But no evidence of 100 grams. Correct. Or more. That is, in fact, in the locked lockbox. There was no key found, either with the defendant or with her husband. However, there was no socket or the Brillo pad or any paraphernalia for the use of crack cocaine found. And also in the lockbox were found credit cards that belonged to the defendant. But they weren't signed necessarily, were they? I mean, they still had the little strips. It doesn't verify the exact status of that. There is conflicting testimony regarding the credit cards. The defendant said that she did not open the accounts and she had never used them. Right, so they weren't activated, in other words. But I don't know if they were activated. Presumably, William could have opened them if she said she didn't open the accounts. But there was no evidence introduced that they were activated? Regarding use or anything, no. And there were no fingerprints found on the cards. Correct. But William's testimony conflicted with her statements because he said that she took the credit cards out of her purse and gave them to him. So having them in her purse is a conflict with her statement that she never opened the accounts and hadn't used them because presumably had she not opened it, she wouldn't have been able or had not opened the accounts, she wouldn't have had possession of them to give to him. Well, but usually credit cards are sent to you in an envelope in the mail. So you have the envelope. You can either take it out of the envelope, put it in your purse, or put the envelope in your purse and they still didn't have to be used until they were activated. But her statement was she had never opened the accounts. Meaning she had never requested the cards? Correct. I see. I had 650 or 651, but I did check that, and her statement was she had never opened the accounts. Well, I suppose that could be interpreted two different ways, though, too, obviously. Opened versus activated. Anyway, go ahead. I hear what you're saying. Okay. And her obvious cocaine intoxication. Defendants, I do want to emphasize defendants' statements that and the trial judge's findings regarding that, that he always put the paraphernalia and tools away or covered them, and the trial judge noted that in particular I'm sorry, I'm looking for that. The socket is a socket from a socket wrench, is it not? Or am I misunderstanding? Her testimony was that she used crack cocaine instead of the powder. So I think she's trying to distance herself not from everything in the basement, you know, the stuff out on the table and the stuff in the safe. Her testimony is that she went with her niece up to Wisconsin to purchase some crack cocaine, and that's why she was in her impaired condition, you know, on the date of the incident. But there was no, and she said something about using a socket and a Brillo pad in imbibing with the crack cocaine. But there was no evidence in the house of any drug paraphernalia, let alone that socket and the Brillo pad. I know the State's concerned about a decision that this court made about a spoon that apparently, in cocaine. I've never heard of a socket wrench being used. Is this unusual? Well, I went to another attorney in our office and asked him, he's our tech guy, and asked him to explain, and he showed me a little socket on his iPhone and explained how one would, but I was, it was novel enough that after 28 years I had to go and find out about it. So, again, in large part, we do agree about the standards you should be applying, and definitely the trial court's finding regarding the conflicts in the evidence and the credibility of the witnesses are entitled to great deference by this court. I commend the entire trial court ruling to your honors. It's at 833 to 844. He makes specific findings. In particular, the court believes that Mrs. Hermes had knowledge of the drugs in the house. She had intent to use those drugs, and then the circumstantial evidence shows that she had control over that cocaine. That's at 843, and then sums it up. I believe the circumstantial evidence leads the court to believe, beyond reasonable doubt, that Mrs. Hermes had constructive possession of 100 to 400 grams of cocaine. But he made, as counsel argued, and I believe you agreed, he made a mistake with regard to a significant finding of fact, which had to do with where the 100, at least the 100 grams of cocaine were found, which was in this locked box, and he... I don't necessarily agree with that. I was trying to go through the trial judge's ruling and try and find where that was. It may or may not have been at 835, but I believe the judge is going through some of the facts, and I don't think he necessarily says that the locked box was open. Certainly, he heard... It may have just been a misstatement. Certainly, he heard the locksmith say that it was locked, but I don't think, given his fact that he's finding she has access, full access to the basement, is an indication that it is inconsistent that just because the locked box was locked and no key was ever found on anybody, that she would not have access. Most locked boxes have more than one key. In this case, there isn't a lot of testimony about the key itself. I don't think that either William or the defendant were directly questioned about it. A large part of that comes out, I think, in defense counsel's argument in closing that there's no evidence regarding the key, and I believe the trial judge's response in his ruling may have been in response to that, but I couldn't find that exact spot. And do you think his finding of not guilty on the possession with intent to deliver charge, don't you think that's inconsistent with his finding with respect to the possession charge? If not, why not? Not at all. In this case, he considered it very carefully, and all the testimony at the hearing is that the defendant is a drug dealer. He only pled guilty to possession himself, but he states clearly that he's a drug dealer. She states in her notebook and her testimony that he is a drug dealer. And I think the judge was clear in his finding on that, which is in the latter part of his. As to the issue of possession with intent to deliver, I don't think there has been any evidence that Mrs. Hermes had intent to deliver any of this cocaine. According to her view, she was reaping the benefits of Mr. Hermes' intent delivering the cocaine. Mrs. Hermes herself didn't want to get involved in that. She wouldn't mind apparently using cocaine, but she didn't show any intent to deliver that particular cocaine as far as the court is concerned. That's at 844. And that particular cocaine was the cocaine found in that black box. Right. So the judge... She was charged for possession as well as intent to deliver. But the judge found, according to the facts and circumstances of this case, that she was just using and possessing. She herself had no intent to deliver that cocaine to anybody else. It was the husband who was the drug dealer. I don't think that's all at all inconsistent. I think it's certainly... I'm sorry. He believed them on that testimony but didn't believe them on the other testimony because was there any testimony except from both the defendant and her husband that he was a drug dealer? I don't think so. No. I think her husband had prior convictions, and I think that was testified to, so I think that's certainly consistent. There was testimony that she had left him when she found out he was a drug dealer, so that certainly would indicate her displeasure with that aspect. So he believed, as I said, that aspect of their testimony but not the other. Correct. And certainly he had the right to do that. I would also like to address a little bit... You had a question about flight and that evidence, and my closing counsel noted that she left with her husband from the hospital. I don't think that is all indicative of a lack of guilt on her part or entirely. It may be somewhat due to her impaired state, but certainly if she left him previously when she found out that he was dealing drugs, she could have stayed in the hospital and said, you know, you're the drug dealer. I'm staying here to face it. They did. They stayed with his mom for a couple hours, then at a motel for a week, and then they went up to her relatives in Michigan. And according to the testimony, she stayed there for 10 days and then came back to Illinois. She said she was going to take care of things here. So two and a half months later, she still hasn't taken care of anything. She is arrested when she goes to a beauty parlor and one of the customers or someone at the beauty parlor recognizes her from the wanted poster in McKinley County and calls the police and they come and arrest her. So certainly that evidence of flight, you know, she hasn't taken care of things here. She hasn't tried to straighten it out. I think that is also evidence of, you know, flight and her guilt. If you took the judge's whole finding, as you've asked us to look at, and you then took a white piece of paper and put state's evidence, defense evidence, and what he referred to for this finding of guilty, although I didn't do it myself, as I'm suggesting that, you know, we could have, it seems to me that the state side would be pretty short and the defense side would be pretty long. That he was using a lot of what was said by the defendant in her own defense, her husband in defense of her. I know the court has to be able to consider that evidence, but can a court essentially find someone guilty beyond a reasonable doubt on that evidence alone? Yes. Anytime a defendant testifies herself or presents defense witnesses, they will, you know, rise or fall by the credibility of their testimony. Here the judge repeatedly found them not to be credible, to be consistent, to be improbable. And if you're making up the list with the state's evidence and the defense evidence, they're also looking at some other inconsistencies, and a lot of that came out contrasting the defense witness's testimony with the police and what they said they found at the house, such as the judge in particular noted the conversation from the jail between the defendant and her husband saying, you know, they have to appear to be, you know, separated in order to fight her case. He noted that in his ruling. There's a number of consistencies. I point out some of them. His testimony that, or their, both of their testimony that he only lived in the basement separate from her, and then the finding by the police of male clothing in the master bedroom, and her comment that, you know, it's all hers, including the sports jerseys, but the officer's testimony that the sizing is inconsistent with what she could have worn. There's the Cialis that is found in the bedside table. She said she knows nothing about that. When the husband is asked about the male sex toys in the drawer, he says they're not hers, or sorry, they're not his, and they're not on his side of the bed, which would be inconsistent. You know, he's, whose sex toys are they? And, you know, the fact that he had a side of the bed up there when all the testimony is that he lived a separate life in the basement. There's a number of inconsistencies like that. So all along, the testimony that they're presenting, and trying to disassociate her from him and anything in the basement is clearly not credible, and the judge made that. So in addition to the facts and circumstances, as I said, you know, if the defendant presents evidence, then he will, you know, rise and fall, you know, by that, as well as the evidence presented by the state. I know I'm over my time. In order to take testimony and flip it on its head or turn it 180 degrees and make the negative positive and establish guilt based upon denial, is not the law that the testimony has to be impeached and plausible? I think what happens is that when there is conflicting evidence, as we have here, then the trial judge is obliged to weigh that, and he makes the credibility and fact-finding determinations. Well, to give you an example, the conflicting evidence in a domestic dispute would be she claimed that she wasn't injured, and the police officer testified that she had two black eyes. Did the police officers come up with anything like black eyes, insofar as making what she was saying or he was saying implausible? I think in cases such as that, you look at the facts and circumstances, which is what the case law dictates. If the defendant can present a plausible explanation that, you know, she had a pet kangaroo who kicked her in the face and she got the black eyes that way, you know, again, and quite frankly, if they have, you know, a six-year history of having an assault every month, you know, factors like that go into consideration. It is the fact and circumstances as they appear in the particular case that get weighed and balanced. I think I asked Mr. Donahue a question, and I would ask you a question that's either the same or similar, and that is, is that if this woman is guilty, then isn't anybody who is a spouse or a significant other guilty? In the sense that this court or the trial court would have found them guilty on the basis that they were residing and things were accessible to them? Not at all. The case law is consistent that mere presence or even mere knowledge is not enough. You take the rest of the fact and circumstances. In this case, you know, we have her cocaine impairment, which is undisputed. We have their contradictory testimony considered. Does that then mean that people who don't have cocaine impairments can't be drug dealers? No, but her credibility, certainly, and her testimony regarding it varies as to whether her binge was four or five days of drinking with just cocaine use on the last day or four or five days of cocaine use. Again, the cocaine use goes to the credibility of her story and the fact that the cocaine paraphernalia is normally kept by her drug-dealing husband put away, but on this day, when she has, obviously, impairment, and the evidence is that it's from powder cocaine because there's evidence regarding sniffing. I think even the judge comments about it from the tape of her in the hospital. I know one of the officers talked about it. Was she given a blood test? There's no evidence about any medical testing. So there's no evidence as to the amount that she may have taken based upon the metabolites in her blood? Correct, and I don't think that any of those tests would have proven crack cocaine, her story, versus powder cocaine, you know, the state's theory. Well, your time is up, I believe. Yes. Anyone else? All right. Again, I commend the trial court's findings. I think those are entitled to great deference, and I think that and all the facts and circumstances certainly show that she had an exercise control over the cocaine, which is found in the lockbox with credit cards in her name. Thank you very much. Thank you. Mr. Donahue. I just want to make three quick points if I may. First of all, there's the issue that was presented, which we presented in our brief, that we believe that the findings of the judge finding her not guilty of possession with the intent to deliver is inconsistent with the fact that the same trial judge found her guilty of possession of that same amount based upon the facts and circumstances. Secondly, the attempts by the hostages. Are you saying that if you can't control it for purposes of delivery, you can't control it at all? Are you saying that one is distinguishable from the other or isn't distinguishable from the other, even though in one you're merely possessing versus lack of intent? Right. I think that if clearly under the facts and circumstances, if he believed that she was in control of what was in that lockbox. To put it another way, if you can't be guilty of the lesser included, how can you be guilty of the more serious? Exactly. And also, Judge, clearly, Your Honors, clearly it was an attempt by the husband and her to exculpate her from the situation. She had left him once. He did not want to have her leave again. And finally, the issue is why would she go to the trouble of contacting a niece to take her to Waukegan and Wisconsin for crack cocaine when, in fact, she had access and control of what was in the lockbox in her own basement? Thank you. Thank you. We'll take the case under advisement. There are no further cases to be called for this. Thank you.